

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. Clin Culberson, Chairman
Railroad Commission of Texas
Austin, Texas

Dear Sir:

Opinion No. O-7046

Re: Where a tract of land is segregated in areas which cannot be drilled except under exception to Rule 37, does the holder of the first lease granted (consideration of waste excepted) have a prior right to a permit over the holder of a subsequent lease?

Your letter of January 15, 1946, describes the following situation before the Commission:

"In the Hawkins Field of East Texas, the Commission has had an application filed for an exception to Rule 37.

"The proposed location is on some one of four adjoining lots that were under common ownership, and which the Commission has held were subdivided after the discovery of oil. It has been the rule of the Commission in granting such exceptions in the townsite of Hawkins to grant only one well to a tract containing twenty acres or less and except in cases where title to property has passed prior to the discovery of oil in the area. In this instance, two applicants are claiming priority on subdivided four lots and have asked the Commission, if exception is granted, to recognize the respective claims of each as to where the well shall be located.

"The application involves four lots in the Hawkins townsite. The leasehold of one of the applicants covers two lots held under the title of the owner of the four lots, and is a subdivision

after discovery. The remaining two lots were leased
to other parties, also after the discovery. All
lots are adjoining and contiguous.

"One of the applicant's leases from the origi-
nal owner of the four subdivided lots is prior in
point of time to the lease on the other two lots.
This applicant contends that the lessors and
original owners of the four lots have a right to
at least one well on said four lots (The Commission
is agreeable to this contention but has hereto-
fore refused applications for one well on each of
the two subdivided lots); that their lease, being
prior in point of time to the lease on the other
two lots, they (the applicants) are entitled to a
prior right to a permit as compared with those
holding a subsequent lease on the other two lots.

"I wish to again repeat that the Commission
has held that only one well can be drilled on
these four lots, and we have not been considering
the location of the well anywhere other than as
above-mentioned.

"At the request of applicants, the following
law question is propounded:

"QUESTION: Where a tract of land is segre-
gated in areas which cannot be drilled except under
exception to Rule 37, does the holder of the first
lease granted (consideration of waste excepted)
have a prior right to a permit over the holder of
a subsequent lease?"

The described fact situation is an ultimate result
of the application of Rule 37 and its allowable exceptions to
the Hawkins Field of East Texas. The owner of the four lots is
entitled to but one well. He cannot expand this right by a
voluntary subdivision and thereby create a right in himself,
or in any lessee, to an additional well. Sun Oil Company vs.
Railroad Commission, 68 S. W. (2d) 609. Nevertheless, the
owner-lessor had seen fit to grant an oil and gas lease to two
of the lots to one lessee, and, at a later date, an additional

lease on the other two lots to another lessee and without any
express conveyance of his right to the one well to either lessee.
We assume that the oil and gas leases to the two lessees employed
the same and standard form with respect to drilling rights.

Extensive research indicates that the precise question
at hand is one of first impression. In the case of Railroad
Commission, et al, vs. Miller, 165 S. W. (2d) 504, the Court
specifically reserved the question of the legal effect of the
two circumstances: (1) a small tract which can be developed
only under exception to Rule 37 to protect vested rights, and
as such entitled to but one well; and (2) the facts of a prior
and of a subsequent lease on subdivisions of the tract without
an express conveyance by the owner-lessor of the right to the one
allowable well.

We are of the opinion that the legal effect of the
first lease in relation to the second, in the respects about
which you inquire---whether described as an implied conveyance
of the lessor's right to drill the one well, or the granting
to the first lessee of a preferential right to drill such well,
or otherwise--is to give to the first lessee a prior right to a
permit to drill as against the holder of the subsequent lease.
The pronouncement of the Court in Edgar, et al, vs. Stanolind
Oil & Gas Company, et al, 90 S. W. (2d) 656, writ refused, that
a subsequent lessee "could secure no greater right" under the
law than that vested in his lessors" is persuasive by analogy.

It is believed that from any approach to the question,
the first lessee is in the stronger legal and equitable position.
For example, under the application of the imputed notice doctrine
(see 31 Tex. Jur. pp. 363, 364; Belcher Land Mtg. Co. vs. Clark,
238 S. W. 685)--and the facts and circumstances are ample, in
our opinion, for its application--the second lessee is charged
with notice of the fact of the first lease, together with the
corollary fact that the lessor had previously divested himself
of such rights as were granted in the oil and gas lease, one of
which was the right to drill.

Therefore, under the facts stated in your inquiry,
and expressly limited to such facts, your question is answered
in the affirmative.

We express no opinion upon the question of the rights
of the second lessee in event of drainage of his leasehold by

the first well (see Magnolia Pet. Co. vs. Blankenship, et al, 85 Fed. (2d) 553), or upon any questions which might subsequently arise concerning additional wells.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Zollie C. Steakley
Assistant

ZCS:jt

FEB 5, 1946

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN